IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

David Melvin, on behalf of   )
himself and all other   )
similarly situated   )
    )
   Plaintiff,   )
    )
   v.   )   No. 21 CV 2194
    )
Big Data Arts, LLC, a South   )
Dakota limited liability   )
company[1]   )
    )
   Defendant.   )

Memorandum Opinion and Order

The class action complaint in this case alleges that defendant purports to offer "the world's largest collection of DNA analysis reports," which consumers can purchase after uploading their personal genetic information to the website Sequencing.com (the "Website"). In early 2020, plaintiff David Melvin created an account on the Website and uploaded the results of a DNA test that he had previously taken. He later purchased a membership and ordered at least fourteen genetic reports from the Website. In this suit, Melvin

---

[1] Plaintiff initially filed this suit in the Circuit Court of Cook County under the caption *Melvin v. Sequencing, LLC*. When the case was removed to this Court, it was recaptioned as *Melvin v. Big Data Arts, LLC*, presumably because the civil cover sheet attached to defendant's removal papers named "BIG DATA ARTS, LLC, doing business as Sequencing.com (erroneously named as Sequencing, LLC)" as defendant. The parties appear to agree that for present purposes, nothing hinges on which party is named as defendant.

claims although the Website states that defendant puts its customers' "privacy first," promising that "we do not sell or share your data with anyone," defendant disclosed his and the class members' genetic information to unknown third-party developers without their knowledge or consent. He claims that this conduct violates the Illinois Genetic Information Privacy Act, 410 ILCS 513, *et seq*.

Defendant moves to compel arbitration of plaintiff's individual claim and to dismiss or stay this action pending the outcome of such arbitration. Defendant argues that by creating an account on the Website, uploading his genetic information, purchasing a membership, and ordering and paying for various genetic reports, plaintiff agreed to the Website's Terms of Use, which contain mandatory arbitration provisions. Plaintiff disputes that he ever saw or agreed to the arbitration agreement defendant asserts. For the reasons that follow, defendant's motion is denied.

I.

"As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). Accordingly, a party seeking to compel arbitration must begin by establishing the existence of a binding and enforceable arbitration agreement. *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *3 (N.D. Ill.

2

May 15, 2020). Under Illinois law, which the parties appear to agree applies here, general contract principles govern the formation of contracts over the Internet. *Sgouros*, 817 F.3d at 1034.

To form an enforceable contract in the online context, "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Id*. at 1036. This is a "fact-intensive inquiry," and courts do not presume that a user who merely clicks a box on a computer screen has notice of the contents of both that screen and other screens displayed after the user takes some additional action, such as scrolling or clicking on a hyperlink. *Id*. at 1034-35. Nevertheless, actual notice of terms requiring arbitration is not required; assent may be based on constructive notice. *See*, e.g., *Wilson v. Redbox Automated* Retail, LLC, 448 F. Supp. 3d 873, 882 (N.D. Ill. 2020) ("while a party to an internet transaction may lack actual knowledge of additional terms and conditions, she may nonetheless have constructive knowledge of those terms where the website provides clear and conspicuous notice of them."). To determine whether an internet consumer has constructive knowledge of an arbitration agreement, courts should consider "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros*, 817 F.3d at 1034.

Defendant argues that the Website's Terms of Use contain a mandatory arbitration clause, and that plaintiff "affirmatively agreed to be bound by the Website's Terms of Use...because it is impossible to sign up for membership to the Defendant's Website without agreeing to the Terms." Mot. at 1-2. But plaintiff states in a declaration filed in response to defendant's motion that he does not recall "seeing or clicking on any box or button on the website referencing terms of use" when he created an account, purchased a membership, or purchasing genetic reports. Melvin Decl., at ¶¶ 3, 4 5.

As the party seeking to compel arbitration, defendant bears the burden of proving that plaintiff agreed to arbitrate the claim he asserts here. *Van Tassell v. United Mktg. Grp.*, LLC, 795 F. Supp. 2d 770, 786 (N.D. Ill. 2011) ("the party seeking to compel arbitration must establish that the parties' arbitration agreement was validly formed, covers the dispute in question, and is legally enforceable.") (citing *Granite Rock Co. v. Int'l Brod. of Teamsters*, 130 S. Ct., 2847, 2858 (2010), and *Zurich Am. Ins. Co. v. Watts Indust., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). To decide this question, courts apply an evidentiary standard similar to the one that applies at summary judgment, meaning that if the party seeking arbitration offers sufficient evidence to allow a factfinder to conclude that the parties agreed to arbitrate, the party opposing arbitration must identify facts showing a genuine dispute as to the existence of the

agreement. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002); *see also Johnson v. Uber Techs., Inc.*, No. 16 C 5468, 2017 WL 1155384, at *2 (N.D. Ill. Mar. 13, 2017).

The factual basis on which defendant rests its motion is the declaration of its CEO, Brandon Colby, who states:

> When Plaintiff signed up for membership the Website required by modified clickwrap that Plaintiff agrees to the terms of his membership, which included the Terms [of Use] and a privacy policy. The Website also included a button for Plaintiff to press, "Place Your Order", when agreeing to the Terms.

Colby Decl. at ¶ 8. A consumer presented with a "modified clickwrap" agreement "is told that consequences will necessarily flow from his assenting click and also is placed on notice of how or where to obtain a full understanding of those consequences." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1150 (D. Colo. 2012) (citing cases), aff'd, 925 F. Supp. 2d 1185 (D. Colo. 2013). But Colby's conclusory statement above does not describe the language, layout, or other features of the Website to support his characterization of it as presenting a "modified clickwrap." Indeed, the Colby affidavit does not explain where or how the Terms of Use were displayed on the Website, nor does it describe or attach screenshots of the screens it suggests plaintiff would have had to navigate to see and accept the Terms of Use. The affidavit is similarly silent with respect to the placement, font size, and text color of the "Place Your Order" button or the relationship between that button and the Terms of Use. In sum, defendant offers none of

5

the facts that would allow a factfinder to draw the reasonable inference that plaintiff had constructive notice of the contents of the Terms of Use.

After plaintiff called out the factual shortcomings in defendant's motion in his own response brief, defendant attempted to cure them through supplemental evidence submitted in conjunction with its reply. Yet defendant's additional materials merely highlight the parties' factual disputes. For example, in a supplemental declaration, Colby refers for the first time to the Website's "Terms and Conditions," which he states that plaintiff was required to accept—in addition to the previously identified Terms of Use—when he "created his account and then signed up for a membership." Colby Reply Decl. at ¶ 4. Colby attaches a screenshot of a checkout page containing a large blue button with white text that states, "Place your order," above which appears black and white text that reads, "I have read and agree to the terms and conditions." The words "terms and conditions" are in blue and appear to be a hyperlink. To the left of this text is a checkable box.

Colby also attaches to his supplemental declaration the referenced "Terms and Conditions." Conspicuously, these do not contain the arbitration agreement defendant asserts. Instead, the arbitration agreement is contained in the Terms of Use (also attached to the declaration), which appear to be hyperlinked, along with a list of other items, under the caption "Additional Information" found

6

at the bottom of the Terms and Conditions. This list also includes links to defendant's "Privacy Policy," "Disclaimer," "Payment Methods," "Refund Policy," and "Contact." Nothing about this presentation signals to a consumer that the content of these items includes provisions to which he or she agrees to be bound by checking the box indicating agreement to the Website's "terms and conditions."

These circumstances alone establish a triable dispute on the issue of contract formation, but in fact there is more: In his response brief, plaintiff includes links to two pages that he states are archived versions of pages from the Website as they appeared around the time he registered for his account and signed up for membership. Neither page includes a box that that may be checked to indicate agreement to the Terms of Use. Defendant's reply to this evidence—that these pages are different from the ones plaintiff would have seen—only adds an additional dimension to the parties' factual dispute over whether plaintiff agreed to arbitrate his claims.

Finally, it bears noting that the arbitration agreement in the Terms of Use facially requires arbitration "in Minnehaha County, South Dakota." Yet, "where [an] arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (original emphasis). Defendant does not dispute this principle but states that it seeks to compel arbitration in Illinois. What

defendant fails to explain, however, is why plaintiff's putative assent to an agreement facially requiring arbitration in South Dakota can be construed as an agreement to arbitrate *in Illinois*.

For the foregoing reasons, defendant's motion to dismiss or stay is denied. The parties are directed to engage in expedited discovery limited to the issue of contract formation, at the conclusion of which they shall file a status report indicating whether a motion for summary judgment is appropriate on this issue, or whether they intend to proceed directly to trial. The parties shall file a proposed discovery schedule by August 16, 2021.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 9, 2021