**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DAVID MELVIN, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No.: 1:21-cv-02194 |
| *v.* | Hon. Elaine E. Bucklo |
| SEQUENCING, LLC**,** a California limited liability company, | |
| *Defendant.* | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## I.      INTRODUCTION

Defendant Sequencing, LLC[1] operates a website offering genetic analyses of DNA data files that users upload. Plaintiff David Melvin alleges, on behalf of himself and others similarly situated, that Sequencing shared their genetic information with third party testers without first obtaining their written consent. Following the close of discovery, Melvin filed a motion (the "Motion") seeking certification of the following Class:[2]

> All people located in the State of Illinois who, from January 28, 2020, through September 1, 2022, had their genetic test results disclosed to any third party by Sequencing.

Sequencing filed a perfunctory opposition (the "Opposition") to the Motion that contains a mere three pages of purported argument. None of Sequencing's weakly supported points pose any real challenge to certification. To the contrary, Sequencing's near-total failure to raise or develop any substantive arguments—even if ultimately wrong or misguided—as to why certification is improper only underscores the appropriateness of certifying the Class and Subclass.

Viewing Sequencing's Opposition in its best light, Sequencing asserts several broad arguments that it says preclude certification. First, Sequencing makes a passing reference to Rule 23(a)'s numerosity requirement. (Opp. at 11.) Upon a close read, however, this entire section is nothing more than a rule statement; Sequencing does not actually argue that numerosity isn't met in this case. Second, Sequencing claims that commonality is not met because Class Members have different injuries, (*id.* at 11–12), and that Melvin's unique injury (or lack thereof) means he is inadequate, (*id.* at 13). This ignores that Melvin and the Class Members are all asserting

---

[1]      Counsel for Defendant represents that Big Data Arts, LLC operated the website at issue in this lawsuit. Big Data Arts, LLC then converted to Sequencing, Inc., a Delaware Corporation.

[2]      Sequencing does not specifically address the proposed Subclass consisting of Class Members who purchased a DNA analysis through the Sequencing website that was conducted by Silverberry Genomix.

exactly the same injury, stemming from exactly the same uniform conduct, which entitles them to exactly the same damages. Melvin is in an identical position as every other Class Member, such that their interests are coextensive. Third, Sequencing contends that any class certification decision should be placed on hold pending adjudication of its affirmative defenses. (*Id.* at 13.) In short, Sequencing asks to address the merits of Melvin's claims *before* revisiting whether certification is appropriate and a trial on behalf of the Class; this would adopt the inefficiencies that the class action device is meant to protect against. Finally, while not actually tethered to its arguments against certification, Sequencing's introduction weighs in on the supposed differences between the Genetic Information Privacy Act and the Biometric Information Privacy Act, (*id.* at 1–4), and its "statement of facts" attempts to litigate the enforceability of clickwrap agreements. Neither affects whether the Class is appropriately certified, (*id.* at 6–7 n.6). For the reasons set forth herein and in Melvin's opening Motion, the Court should certify the Class and Subclass.

## II.    ARGUMENT

### A.    The Class and Subclass Are Sufficiently Numerous.

While Sequencing includes two paragraphs of rule statements, (Opp. at 11), it does not actually assert that numerosity is not met in this case. Nor could it: Sequencing's CEO provided a sworn declaration that Sequencing registered more than 1,500 users with Illinois IP addresses, with 869 having uploaded and stored genetic data files on Sequencing. (Mot. at 9.) Sequencing's CEO further admitted that there are likely more than 500 Illinois users that have purchased a report through Sequencing. (*Id.*) And based on Silverberry Genomix's percentage share of the tests conducted through Sequencing, the Subclass is also too large to join all members (*Id.*) This is a far cry from *Holly v. Alta Newport Hospital, Inc.*, in which the plaintiff alleged that the defendant's employee took only six pictures of medical records (one of which was plaintiff's) in

data breach case against the hospital. 612 F. Supp. 3d 1017, 1027 (C.D. Cal. 2020) (granting motion to strike with leave to amend complaint to include allegations that pictures could have contained more than just six records). Both the Class and Subclass are sufficiently numerous such that joinder is impractical.

### B. Plaintiff and the Class Seek the Same Damages to Redress the Same Injury Stemming from the Website's Uniform Operation.

Turning to commonality and adequacy, Sequencing argues that Melvin and the Class he seeks to represent have suffered different injuries. (Opp. at 11–13.) According to Sequencing, this means that (unspecified) individual questions will predominate over common ones, and that Melvin cannot adequately represent the Class. Neither of these arguments holds up to scrutiny.

First, Sequencing rehashes the rule statement that the gravamen of the commonality inquiry is whether common proof can be used to answer common questions. (*Id.* at 11.) Melvin doesn't disagree. As described in the Motion, the uniform operation of Sequencing's website, the signup process, the application programming interface that Sequencing used to transfer data, the type of data that was actually transferred, and every other relevant consideration was common across the Class. (*See, e.g.*, Mot. at 11–14.) Sequencing's contention that Melvin "merely concludes that every aspect of the case is the same…without any support" (Opp. at 12), is demonstrably false. Indeed, Sequencing's CEO admitted that Melvin's experience would be the same as all other Class Members. (Mot. at 15.) This common nucleus of evidence will be used to answer the common questions that will drive the resolution of this case. (*Id.* at 11–14.) This includes whether Sequencing's conduct, as alleged, constitutes a violation of one or more of each of the GIPA sections that Melvin's complaint implicates, and whether he and the Class are entitled to statutory damages. (*Id.*)

Sequencing does not meaningfully dispute any of this, at most suggesting that there will

need to be some individualized inquiry into whether a class member suffered an injury. (Opp. at 12.) We are left to guess what that individual inquiry would need to be, as Sequencing doesn't tell us. (*Id.*) This is insufficient. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014) ("[W]here a defendant fails to set forth this specific evidence and instead only makes vague assertions about [the at-issue element], then individualized issues regarding that element will not predominate over common questions of law or fact so as to prevent class certification.") (cleaned up). Given that Melvin and the Class are only seeking statutory damages as allowed under the GIPA, and not actual damages, it is difficult to see what those could be. (Mot. at 10, 14.) The GIPA provides for statutory damages for violations of its provisions. 410 ILCS 513/40(a). Thus, there are no potential individualized issues that could arise in a different case where actual damages needed to be proved, as in Defendant's authority. *See, e.g.*, *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (recognizing that based on "the different injuries suffered or avoided by putative class members, the potential for variance in shareholder circumstances becomes significant"). Nor is there a knowledge or scienter requirement that any individual Class Member would need to demonstrate. *See id.*

Second, and relatedly, Sequencing argues that there is a "potential conflict of interest" between Melvin and the Class. (Opp. at 13.) While we're left to guess what that could be, it is telling that even Sequencing can't claim with any certainty that there is in fact any such divergence in interest between Melvin and the Class. (*See id.*) Given Sequencing's CEO already testified to the sameness between Melvin and his fellow Class Members' experiences using the website, this is no surprise. (Mot. at 15–16.) Melvin is in the same position as all other Class and Subclass Members that he seeks to represent. (*Id.* at 16.) He has acted in their interests throughout this litigation and will continue to do so through its conclusion. (*Id.*)

Melvin has satisfied Rule 23's commonality and adequacy requirements.

### C. Class Certification Is Appropriately Decided Now—Before a Merits Decision, Not After.

Sequencing next suggests that delaying resolution of the class certification question until after its affirmative defenses are addressed is the proper course of action. (Opp. at 13–14.) Sequencing points out that courts may need to "probe behind the pleadings" before deciding class certification. (*Id.* (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).) But this overlooks the case's posture. This matter is far beyond the pleadings, and past the close of discovery. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (cautioning against "[c]ertifying classes on the basis of incontestable allegations in the complaint").[3] Melvin isn't relying on the pleadings to substantiate his class certification motion; he's relying on evidence compiled in the case's discovery phase. (*See generally* Mot. (relying on deposition testimony and documentary evidence).) For its part, Sequencing hasn't cited a single piece of evidence in the entirety of its Opposition, nor grappled with the import of the evidence Melvin cites. Melvin has met his burden to demonstrate each relevant Rule 23 element by a preponderance of the evidence. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015).

Sequencing's proposal to present arguments about its affirmative defenses threatens to do exactly what the Seventh Circuit has cautioned against: "turn[ing] the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *see also*

---

[3] Sequencing's citations only underscore that mere reliance on the pleadings, and not evidence, may not survive certification. *See Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 797 (5th Cir. 1982) (noting "[d]iscovery may fill this void" and allow for certification); *Marcera v. Chinlund*, 565 F.2d 253, 255 (2d Cir. 1977) (reflecting that "[t]he court acted solely on the pleadings" when determining class certification).

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("[T]he court must look only so far as to determine whether … common evidence could suffice to make out a prima facie case for the class."). Sequencing's course of action would also run afoul of the rule against "one-way intervention," which "prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016). In *Costello*, the Seventh Circuit noted "this sequencing raises serious questions, and we urge district courts to exercise caution before deciding to embrace it." *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 299 n. 7 (1st Cir. 2000)).

Rule 23(c)(1)(A) requires that the Court decide certification "at an early practicable time." That time is now, after the development of the factual record and Melvin's evidentiary submissions to the Court.

> ### D. Sequencing's Miscellaneous Introduction and Fact Section Do Not Warrant Denying Certification.

Finally, Sequencing makes certain points in its introduction and fact sections that warrant a brief discussion. Sequencing spills pages of ink on (ii) the differences between the GIPA and the BIPA; and (ii) the enforceability of clickwrap agreements. To the extent the Court considers construes these arguments against class certification (even though they are not actually tied to any such argument in the Opposition), neither warrant denying certification.

As to the GIPA and the BIPA, Sequencing makes much of the fact that they are different statutes that protect against different harms. (Opp. at 2–3.) That may be true; Melvin does not argue otherwise. However, as a matter of statutory interpretation, the two are markedly similar: both protect against the disclosure of certain information without first obtaining the requisite consent, and allow individuals to recover statutory damages if their information is shared without their consent. *Compare* 410 ILCS 513/1, *et seq. with* 740 ILCS 14/1, *et seq.* Just as classes have

6

been adversarially certified under the BIPA, *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535 (N.D. Ill. 2018), so too can an adversarial class be certified under the GIPA.

Sequencing makes a number of arguments in the footnotes of its "statement of fact" section regarding the applicability of "clickwrap" or "modified clickwrap" agreements. This argument is largely beside the point. Whether any such agreement is actually enforceable, or what the contents of that agreement impacts the merits of the claims, doesn't matter at the class certification stage. At this stage, the *capability* of answering those questions at once for the entirety of the Class and Subclass is what matters, not the answer itself. As explained in the Motion, based on the same sign-up processes that all Class Members went through, and their uniform interactions with the website, these questions can be answered for all Members. (Mot. at 13–14.) Sequencing does not cite to any evidence reflecting the workflow that Melvin or the Class followed, such as screenshots from the relevant time periods, to argue how any of their experiences could be different, or to support that they signed up in different ways for different terms of use. (Opp. at 6–8.) To the extent considered, these arguments should be rejected.

### III.    CONCLUSION

Sequencing's Opposition raises nothing that undermines the arguments advanced in Melvin's opening Motion. The Court should appropriately certify the Class and Subclass.

Respectfully submitted,

**DAVID MELVIN**, individually and on behalf of all others similarly situated,

Date: June 30, 2023                    /s/ Michael W. Ovca

Benjamin H. Richman
brichma@edelson.com

Roger Perlstadt
rperlstadt@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel. 312-561-4106
Fax. 312-589-6378

*Counsel for Plaintiff David Melvin and the
Putative Class*