**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DAVID MELVIN, individually and on behalf of all others similarly situated | |
| *Plaintiff,* | Case No.: 1:21-cv-02194 |
| *v.* | Hon. Elaine E. Bucklo |
| SEQUENCING, INC**,** a California limited liability company, | |
| *Defendant.* | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................2

      A.     GIPA Sets Stringent Protections for Individuals' Genetic Information ..........2

      B.     Sequencing Allegedly Discloses Genetic Data in Violation of GIPA ................2

      C.     Melvin's Suit Is Litigated Through Class Certification Before the Settlement Is Reached ................................................................................4

III.   TERMS OF THE SETTLEMENT AGREEMENT ........................................6

      A.     Class Definition ................................................................................6

      B.     Monetary Relief ................................................................................7

      C.     Prospective Relief ................................................................................7

      D.     Payment of Settlement Notice and Administrative Costs ................................8

      E.     Payment of Attorneys' Fees, Costs, and Incentive Award ................................8

      F.     Release of Liability ................................................................................9

IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASS ............ 9

      A.     The Settlement Class Should Be Certified ................................................ 10

      B.     The Proposed Settlement Warrants Preliminary Approval .......................... 12

            1.     The Court Should Once Again Find Plaintiff and Class Counsel Adequate Representatives of the Settlement Class ............................ 13

            2.     The Settlement Was Negotiated at Arm's Length ............................... 14

            3.     The Settlement Provides Impressive Automatic Relief for the Settlement Class in the Second GIPA Settlement Ever Reached ....... 15

                    a.     The benefits of settlement outweigh the cost, risk, and delay of further litigation ............................................................ 15

b.     As one of the first ever GIPA class action settlements, the automatic payments obtained here are impressive ................. 16

c.     The risks of continued litigation through summary judgment, trial, appeals, and collections weigh heavily in favor of Settlement .................................................... 18

d.     The proposed method of distributing relief to the Settlement Class is effective ........................................ 19

e.     The terms of the requested attorneys' fees are reasonable ..... 20

f.     There are no side agreements separate from the Settlement Agreement ............................................... 21

g.     The Settlement treats Class Members equitably ................... 21

C.     The Proposed Notice Plan Should Be Approved in Form and Substance ..... 22

V.     CLASS COUNSEL'S APPOINTMENT SHOULD BE CONFIRMED FOR PURPOSES OF THE SETTLEMENT ......................................................... 23

VI.     CONCLUSION ................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**<u>U.S. Supreme Court Cases</u>**

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999).........................................................................................21

**<u>U.S. Court of Appeals Cases</u>**

*Cothron v. White Castle Sys., Inc.,*
    20 F.4th 1156 (7th Cir. 2021), *certified question answered,* 216 N.E.3d 918,
    *as modified on denial of reh'g* (July 18, 2023)............................................19

*In re Motorola Secs. Litig.,*
    644 F.3d 511 (7th Cir. 2011) ...................................................................11

*Schorsch v. Hewlett-Packard Co.,*
    417 F.3d 748 (7th Cir. 2005) ...................................................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ..............................................................12, 16

**<u>U.S. District Court Cases</u>**

*Alvarado v. Int'l Laser Prods., Inc.,*
    No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020)....................................................20

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ......................14

*Charvat v. Valente,*
    No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ...........14, 19

*Cornejo v. Amcor Rigid Plastics USA, LLC,*
    No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020)..............................................20

*Gates v. City of Chi.,*
    No. 04 C 2155, 2011 WL 1811187 (N.D. Ill. May 12, 2011) ......................11

*Goldsmith v. Tech. Sols. Co.,*
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)....................18

*Hale v. State Farm Mut. Auto. Ins. Co.,*
    No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)................12

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    No. 3:10-CV-00426-WMC, 2014 WL 12725371 (W.D. Wis. Sept. 17, 2014)..........11

*Lopez-McNear v. Superior Health Linens, LLC*,
    No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) ...................................................................20

*Sentinel Ins. Co., Ltd v. Sequencing, Inc.*,
    No. 1:24-cv-04949 (N.D. Ill. June 14, 2024).........................................................1, 19

*Moehrl v. Nat'l Ass'n of Realtors*,
    No. 19-CV-01610, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)...............................10

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
    No. 18 C 1526, 2020 WL 4345418 (N.D. Ill. July 29, 2020) .....................................24

*Red Barn Motors, Inc. v. NextGear Cap., Inc.*,
    No.1:14-CV-01589-TWP-DLP, 2020 WL 919464 (S.D. Ind. Feb. 26, 2020) ............10

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ..............................13, 15

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ............................ *passim*

*Young v. Rolling in the Dough*,
    No. 17-cv-7825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020).....................................19

## State Court Cases

*Burton v. BWAY Corp.*,
    No. 2018-CH-09797 (Cir. Ct. Cook Cnty. Apr. 4, 2023) ...........................................18

*Marshall v. Life Time Fitness, Inc.*,
    No. 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019)..........................................18

*Sykes v. Clearstaff, Inc.*,
    No. 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan. 5, 2021) ...........................................18

*Zhirovetskiy v. Zayo Grp., LLC*,
    No. 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) ...........................................17

## Miscellaneous Authority

4 Newberg and Rubenstein on Class Actions — 13:1 (6th ed.) ..........................................9

410 ILCS 513 ..........................................................................................................1, 2, 17

740 ILCS 14 ...................................................................................................................17

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Wright and Miller, Alteration or Amendment of Certification, 7AA Fed. Prac. & Proc. Civ. — 1785.4 (3d ed.) ..........................................................................................................11

## I.     INTRODUCTION

Plaintiff David Melvin alleges that Defendant Sequencing, Inc. ("Sequencing") violated the Illinois Genetic Information Privacy Act, 410 ILCS 513, *et seq*. ("GIPA") by sharing his and other class members' genetic information with third parties without their express authorization. After litigating this case for years, engaging in significant discovery efforts, and obtaining a first-ever adversarial class certification in a GIPA case, the Parties reached a groundbreaking Settlement on the eve of sending class notice.[1]

This is one of the first cases to settle genetic privacy claims, and this settlement sets a new benchmark for those that follow: a non-reversionary, all-cash settlement fund with no claims process that—if approved—will result in automatic payments to every Settlement Class Member of nearly $300. The Settlement includes prospective relief that ensures a cessation of the allegedly unlawful underlying conduct. This settlement far outpaces the only other genetic information privacy settlement of which Class Counsel are aware, eschewing credit monitoring and a claims process for automatic cash. And it even compares favorably to settlements arising from well-established privacy claims, like the Illinois Biometric Information Privacy Act.

Plaintiff accomplished this against a backdrop of unsettled law and a defendant with considerable financial limitations. Even setting aside the myriad risks that come with resolving issues of first impression under the GIPA, Sequencing does not have the financial wherewithal on its own to withstand a judgment in the Settlement Class's favor. Compounding this financial risk, Sequencing's insurance carrier has disclaimed coverage and filed an action seeking declaratory relief. *See Sentinel Ins. Co., Ltd. v. Sequencing, Inc.*, No. 1:24-cv-04949, Dkt. 1

---

[1]     A copy of the proposed Class Action Settlement Agreement (the "Settlement") is attached as Exhibit 1. Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Settlement.

(N.D. Ill. June 14, 2024).

As discussed further below, the proposed Settlement more than satisfies the requirements for preliminary approval under Rule 23. The Court should not hesitate to preliminarily approve the proposed Settlement, certify the proposed Settlement Class for settlement purposes, reaffirm Class Counsel's appointment for purposes of the Settlement, direct that notice be provided to Settlement Class Members, and schedule a Final Approval Hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     GIPA Sets Stringent Protections for Individuals' Genetic information.

As the Court previously recognized, GIPA enhances privacy protections by barring the unauthorized disclosure and use of an individual's genetic information. (Dkt. 60 at 2 (citing 410 ILCS 513/5).) Specifically, Section 15 provides that "genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing in accordance with Section 30, by that individual to receive the information." 410 ILCS 513/15(a). Section 30, in turn, states "[n]o person may disclose … the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test, except to … [a]ny person designated in a specific written legally effective authorization for release of the test results executed by the subject of the test…." 410 ILCS 513/30(a)(2). Lastly, Section 35 states that "[n]o person to whom the results of a test have been disclosed may disclose the test results to another person except as authorized under this Act." 410 ILCS 513/35.

### B.     Sequencing Allegedly Discloses Genetic Data in Violation of GIPA.

Sequencing offers genetic reports through an "online marketplace" on its website, www.sequencing.com. (First Amended Complaint ("FAC"), dkt. 73 ¶ 1.) To produce these reports, Melvin alleges that Sequencing shares its customers' genetic information with third-

2

party developers without consent. (*Id.* ¶ 2.) It works like this: after a user creates an account with Sequencing, they can either purchase a DNA test kit directly from Sequencing and return the results of the test to Sequencing or upload the results of a DNA test taken or stored elsewhere— for example, from 23andMe or Ancestry.com—to Sequencing's website. (*See* Deposition of Brandon Colby ("Colby Dep."), dkt. 53-1 at 31:18-32:8.) Either option results in the creation of a "DNA data file" containing "raw human DNA data" that can be used to assess genotype and to analyze different aspects of the user's genetic code. (*Id.* at 33:16-34:12.)

Consumers then use Sequencing's "marketplace" to purchase reports about their genetic information. For example, Sequencing offers reports analyzing a user's heart health, likely reactions to medications, or risks associated with inherited diseases. Other reports offer DNA-specific recommendations on diet or general health improvements. Most of the reports available on the marketplace are provided by third-party developers. (*Id.* at 44:14-45:5 (estimating that 80% of the marketplace applications are developed by third parties).) To obtain these reports, Sequencing sends its users' genetic information and other identifying details to those developers so that they can perform their analyses on that genetic information. (FAC ¶¶ 21-22.) In other words, Sequencing does not run these analyses on its own servers, but sends the data to the third parties, where they run the analyses on their own systems unaffiliated with Sequencing. (*Id.*) These third parties then send their reports back to Sequencing, where they are delivered to the user.

In 2020, Melvin created an account with Sequencing, uploaded his genetic information to the Sequencing website, and purchased several genetic reports. (*Id.* ¶¶ 24-25.) Melvin thereafter learned that his genetic and personal information were sent to third party developers in connection with these reports. (*See id.* ¶ 25.) He alleges that Sequencing failed to notify him that

3

his genetic information would be shared or to obtain his consent to do so. (*Id*. ¶¶ 27-28.) Melvin filed this lawsuit on behalf of himself and a class of similarly situated individuals alleging this conduct violated GIPA.

### C. Melvin's Suit Is Litigated Through Class Certification Before the Settlement Is Reached.

Melvin first filed his suit in the Circuit Court of Cook County on January 28, 2021. Sequencing then removed the case to this Court and moved to compel arbitration. Melvin opposed, arguing that Sequencing failed to carry its burden to show that the Parties entered into an arbitration agreement. (Dkt. 12.) The Court ultimately denied Defendant's motion to compel without prejudice and directed Plaintiff to take expedited discovery related to contract formation. (Dkt. 17.) Following the Court's order, the Parties exchanged written discovery and production of screenshots related to how Melvin signed up to use Sequencing's website. (Declaration of Michael Ovca ("Ovca Decl."), attached as Exhibit 2, ¶ 3.) Following the completion of this process, Defendant indicated it was not going to renew its motion to compel or otherwise pursue arbitration. (Dkt. 32.)

The Parties thereafter engaged in written and oral discovery related to the case's merits. (Ovca Decl. ¶ 4.) This involved exchanging multiple sets of interrogatories and document production. (*Id*.) This provided Class Counsel critical information regarding how Sequencing sent and received genetic information to third parties, the types of reports available on the Sequencing marketplace, and the information that Sequencing maintained regarding the putative class. (*Id*.) With this information in hand, Class Counsel took a corporate representative deposition of Sequencing's CEO, Brandon Colby. (*Id*.) This deposition confirmed Plaintiff's understanding of how the website functioned, and how third parties interfaced with the website to obtain users' genetic information, as well as details about the data Sequencing maintained

about the putative class. (*Id.*)

After discovery closed, the Parties fully briefed class certification. Sequencing primarily argued that Melvin could not establish numerosity or commonality among the class members. (Dkt. 56.) The Court disagreed, granting the motion and certifying a class and subclass.[2] (Dkt. 60.) Following certification, the Parties began discussing the approval of a class notice plan, which they eventually agreed to and was later approved by the Court. (*See* dkt. 74; Ovca Decl. ¶ 5.)

In parallel with the Parties' discussion of the notice plan, they returned to discussing the potential for settlement. (Ovca Decl. ¶ 6.) Sequencing, which had retained new counsel, informed Class Counsel that Sequencing's insurance carrier was disputing coverage. (*Id.*) Specifically, the carrier pointed to coverage exclusions that arguably disclaimed payment regarding the GIPA claims at issue in this case. (*Id.*) As these discussions progressed, the Parties sought to stay the dissemination of notice to the class to avoid the duplication of costs associated with one notice informing the class of the certification order, followed by a second, overlapping notice informing the class of a settlement. (*Id.*; Dkt. 98.) The Court granted this request. (Dkt. 101.)

In connection with their settlement discussions, Sequencing provided additional information regarding the makeup of the proposed Settlement Class, including when Sequencing made certain changes to its website that required all of its users to agree to arbitration provisions, and other disclosures regarding information sharing on the website. (Ovca Decl. ¶ 7.) This reflected that there were 713 individuals who, like Melvin, did not go through a sign-up method

---

[2]     As described in Section III.A, *infra*, the individuals included in the class and subclass are encompassed in the Settlement Class.

on the website that mandated arbitration, and who allegedly had their genetic information shared with third parties. (*Id.*) Settlement discussions continued regarding this group and involved, through Sequencing's counsel, input from the insurance carrier. (*Id.* ¶ 8.) After months of ongoing talks, and evaluating the risks of continued litigation, including the risk of non-recovery, the Parties ultimately agreed in principle to the Settlement proposed here. (*Id.* ¶ 9.) This included an agreement to seek modification of the certified classes to align with the proposed Settlement Class. (*Id.*) After notifying the Court of the Settlement, the Parties spent the next few months finalizing the written Settlement documents, which are now before the Court.

## III. TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in the Class Action Settlement Agreement, and are briefly summarized here:

### A. Class Definition

The proposed Settlement Class includes all Illinois residents with a Sequencing.com account who had their genetic information shared with a third party between January 28, 2016, and April 8, 2021. (Settlement § 1.22.)

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; (3) persons who properly execute and file a timely request for exclusion from the Settlement Class; (4) the legal representatives, successors or assigns of any such excluded persons; and (5) individuals who signed up for a Sequencing.com account by checking a box next to a hyperlink to terms of use containing an arbitration clause and information-sharing disclosure. Confirmatory discovery from Defendant has reflected that there are 713 Settlement Class Members. (*Id.*) The Settlement Class includes individuals from the class and subclass

previously certified by the Court. (*See* dkt. 60.)

### B. Monetary Relief

Pursuant to the Settlement, Defendant will establish a non-reversionary Settlement Fund in the amount of $356,500.00. (Settlement §§ 1.24, 2.1(a).) Each Settlement Class Member who does not opt out shall be entitled to payment of a *pro rata* share of the Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and expenses, and any incentive award approved by the Court. (*Id.* §§ 1.25, 2.1(a)-(b).) After deducting these items, each Settlement Class Member is expected to receive a payment of approximately $300. (Ovca Decl. ¶ 14.)

Notably, Settlement Class Members do not have to file claims to receive payment, and if a Settlement Class Member wants to be paid via Venmo or Zelle instead of by check, they may elect to do so on the Settlement Website. (*Id.* §§ 2.1(a)-(b).) If no election is made, checks will be mailed by default. (*Id.* § 2.1(b).) Any checks that remain uncashed after 180 days of issuance, and any electronic deposits unable to be processed within 180 days of the first attempt, shall remain in the Settlement Fund to be distributed *pro rata* to an agreeable *cy pres* designee. (*Id.* § 2.1(e).) No portion of the Settlement Fund will revert to Defendant. (*Id.* § 2.1(f).)

### C. Prospective Relief

The Settlement also requires Defendant to maintain the confidentiality of all users' genetic information in its possession, and only release testing information related to that genetic information to (i) the individual tested; (ii) the individual's legally authorized representative; or (iii) individuals that the individual tested authorizes in writing to receive such information. (*Id.* § 2.2(a).)

To the extent that any genetic testing or analysis that Defendant offers on or in

connection with www.sequencing.com involves the transfer, disclosure, or sharing of any genetic information to or with any third party, Defendant is required, before any transfer, disclosure, or sharing takes place, to: (i) inform any individual obtaining such genetic testing or analysis who the recipients of the genetic information will be and what information they will receive; and (ii) obtain authorization in writing from that individual allowing such information to be transferred, disclosed, or shared. (*Id.* § 2.2(b).) And for any written authorization that an individual provides allowing the transfer, disclosure, or sharing of their genetic information or associated information with a third party, Defendant shall maintain a record of such authorization for at least 7 years from the date of the last transfer, disclosure, or sharing of their genetic information or associated information. (*Id.* § 2.2(c).)

### D.    Payment of Settlement Notice and Administrative Costs

All Settlement notice and administration costs shall be paid from the Settlement Fund. (*Id.* § 1.20.) This includes all expenses incurred by or on behalf of the Settlement Administrator in administering the Settlement Agreement, including expenses relating to providing Notice, maintaining the website, responding to inquiries from members of the Settlement Class, and distributing payments, with all such expenses to be paid from the Settlement Fund. (*Id.*) The proposed Settlement Administrator, Simpluris, Inc., has estimated that such costs will be less than $15,000.

### E.    Payment of Attorneys' Fees, Costs, and Incentive Award

As part of the Settlement, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court. (*Id.* § 8.1.) Class Counsel has agreed, with no consideration from Defendant, to limit their request for attorneys' fees and unreimbursed costs to thirty-five percent (35%) of the Settlement Fund, after Settlement

8

Administration Expenses and incentive awards are deducted. (*Id.*) Defendant retains the right to oppose any amount requested. (*Id.*) Defendant has also agreed, subject to Court approval, to pay Plaintiff Melvin an incentive award in the amount of $5,000 from the Settlement Fund in recognition of the time and effort they expended on behalf of the Class, Subclass, and Settlement Class. (*Id.* § 8.2.) Melvin will move for these payments via a separate request after preliminary approval and prior to the deadline to object.

### F.     Release of Liability

In exchange for the relief described above, each Settlement Class Member will release Defendant from any and all past and present claims or causes of action, whether known or unknown, asserted or unasserted, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law, and whether brought in an individual, representative, or any other capacity, of every nature and description whatsoever, arising from or relating in any way to the allegations in any complaint filed in the Action, including but not limited, any violation of GIPA. (Settlement §§ 1.17, 3.)

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASS

As this Court is well-aware, approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court finds that the settlement falls within the range of final approval, notice of the proposed settlement may be sent to the class, and class members are given an opportunity to object or request exclusion. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.).

At the first stage, preliminary approval, the parties must show "that the court will likely

9

be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A. The Settlement Class Should Be Certified.

Taking the second prong first, the Court granted certification to a class and subclass in August 2023. (Dkt. 60.) Specifically, the Court certified a class of Illinoisans who had their genetic test results disclosed to a third party by Sequencing, along with a subclass of individuals who obtained a test through a particular developer, Silverberry Genomix. (*See id.* at 2.) The Settlement Class definition here has been further refined to reflect when Sequencing implemented changes on its website that required individuals who signed up for a Sequencing.com account to check a box next to a hyperlink to terms of use containing an arbitration clause and information-sharing disclosure, which occurred by April 8, 2021. (*See* Settlement § 1.22.) These edits to Sequencing's workflow mean that individuals who signed up after April 8, 2021 potentially have different claims subject to a different arbitration provision than Melvin and the rest of the Settlement Class, thus warranting a modification of the Class definition. *See, e.g., Moehrl v. Nat'l Ass'n of Realtors*, No. 19-CV-01610, 2023 WL 2683199, at *24 (N.D. Ill. Mar. 29, 2023) (allowing Defendant to move to modify class definition to exclude individuals who allegedly signed agreements with arbitration provisions); *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, No.1:14-CV-01589-TWP-DLP, 2020 WL 919464, at *15 (S.D. Ind. Feb. 26, 2020) (modifying class definition to exclude individuals who allegedly signed agreements with binding arbitration provisions). Additionally, for purposes of settlement, the Silverberry Genomix subclass has been incorporated into the overall Settlement Class. (Settlement § 1.22.) The relatively small number of Settlement Class Members that only obtained reports from Silverberry Genomix makes it impractical to have a separate subclass in the Settlement,

especially given that there are no differences in the relief these individuals are entitled to and that Defendant is not pressing any unique defenses against them. The Court can appropriately modify the existing class definitions to conform to the proposed Settlement Class, which meets all relevant Rule 23 criteria.

Rule 23(c)(1)(C) provides that the Court may "alter[] or amend[]" the order granting certification at any time before final judgment. The Seventh Circuit recognizes that "litigants are free to modify a class via a court-approved settlement agreement[.]" *In re Motorola Secs. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) (collecting cases); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions[.]"); *see also Johnson v. Meriter Health Servs. Emp. Ret. Plan*, No. 3:10-CV-00426-WMC, 2014 WL 12725371, at *2 (W.D. Wis. Sept. 17, 2014) (modifying previously certified class in preliminary approval order to conform with settlement). The revised class definition must comport with Rule 23's requirements. *See Gates v. City of Chi.*, No. 04 C 2155, 2011 WL 1811187, at *3 (N.D. Ill. May 12, 2011) ("[T]he party seeking modification still bears the burden of showing that the proposed class meets the federally mandated requirements for class certification."). Additionally, the modification must take into account Due Process concerns related to absent class members. *See* Wright and Miller, Alteration or Amendment of Certification, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.)

Like the prior certification, the Settlement Class meets all relevant Rule 23(a) and (b) requirements. The principal change to the definition is to update the time period to reflect when Defendant implemented changes to its website that were intended to be captured in the original class definitions. The 713 Settlement Class Members all signed up for a Sequencing.com account, provided genetic information, and allegedly had it shared with third parties in the same

11

overall way. Under the Settlement, they each stand to receive the same *pro rata* share of the Settlement Fund. As no notice has gone out yet, nothing requires a follow-up disclosure addressing the modification or otherwise explaining the differences in the classes to absent class members. If approved, Settlement Class Members will receive the proposed Notice outlined below. As such, the operative class definitions can be appropriately modified and the Settlement Class should be certified for purposes of Settlement and for purposes of entering final judgment after final approval, if granted.

**B.      The Proposed Settlement Warrants Preliminary Approval.**

In addition to showing that the Settlement Class is certifiable, the parties must also show that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).[3] The proposed Settlement in this case easily satisfies these requirements.

---

[3]      The factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at \*2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

### 1. The Court Should Once Again Find Plaintiff and Class Counsel Adequate Representatives of the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This factor "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes"). Ultimately, this factor is satisfied where the named plaintiffs "participated in the case diligently … [a]nd class counsel fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate information base' while negotiating for the settlement," *T.K. through Leshore v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (quoting 2018 Committee Notes). Here, the Court has already made this finding when it appointed Melvin as class representative and his counsel as class counsel. (*See* Dkt. 60.) There is nothing that changes this outcome with respect to the Settlement.

Melvin has diligently participated in the case by helping Class Counsel investigate his GIPA claims, assisting in the preparation of and reviewing the Complaint before filing, becoming familiar with the case more generally, participating in settlement negotiations, and reviewing and approving the Settlement Agreement before signing it. (Ovca Decl. ¶ 12.) Melvin also participated in discovery by responding to interrogatories and document requests. (*Id.*) Class Counsel's performance in this case likewise satisfies this factor. They "fought hard throughout the litigation," briefing and defeating Sequencing's attempt to compel arbitration and attaining adversarial class certification. *See Snyder*, 2019 WL 2103379, at *4. Prior to settling, the Parties exchanged formal and informal discovery and were able to discuss the class as certified. All of this provided Class Counsel with "an adequate information base" on which to negotiate. *T.K.*,

13

2022 WL 888943, at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case"). As this Court has previously determined, Melvin and Class Counsel have adequately represented the Settlement Class. They will continue to do so through the Settlement's final approval.

### 2. The Settlement Was Negotiated at Arm's Length.

Like the first Rule 23(e)(2) factor, the second factor—whether the settlement was negotiated at arm's length—addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. This factor is also satisfied here. The arm's-length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943, at *11 (internal quotation omitted).

Here, there was no collusion between Class Counsel and Defendant to take advantage of the Settlement Class. "Unlike many class action settlements in which settlement negotiations begin before discovery even takes place, this case was contested through an adversarial and contentious process." *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). The Parties engaged in exchanged multiple rounds of written discovery and Class Counsel took the deposition of Defendant's CEO. (Ovca Decl. ¶ 4.) It was only after this Court granted class certification on a fully developed record, and as notice was on the precipice of going out to the classes that settlement discussions began to move forward in earnest. The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, has a common fund calculated based on strong per-person recovery, features automatic payments as opposed to a claims process, and contains no provisions that might suggest fraud or collusion, such as a "clear sailing" or "kicker" clause regarding attorneys' fees.

*See Snyder*, 2019 WL 2103379, at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation").

In a similar vein, the release is not overbroad. Defendant is not getting any release that it is not paying for. That is, there is no general release offered under the Settlement. Rather, the release is only for claims that were or could have been brought in this Action related to the dissemination of Plaintiff's and the Class Members' genetic data. (Settlement § 1.17.) In short, there is nothing to indicate the presence of any collusive behavior here. This factor supports preliminary approval.

### 3. The Settlement Provides Impressive Automatic Relief for the Settlement Class in the Second GIPA Settlement Ever Reached.

The next Rule 23(e)(2) factor considers whether "the relief provided for the class is adequate." Under the amended Rule 23(e)(2), four express considerations are to be taken into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

#### a. The benefits of settlement outweigh the cost, risk, and delay of further litigation.

Although the consideration of "costs, risks, and delay" was not expressly included in Rule 23 until 2018, the Seventh Circuit has long emphasized the need to consider "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement," as well as the "likely complexity, length and expense of the litigation." *T.K.*, 2022 WL 888943, at *12

(quoting *Synfuel Techs., Inc.*, 463 F.3d at 653). Such precedent informs the Court's assessment of the "costs, risks, and delay" consideration of Rule 23(e)(2)(C)(i). *Id.*; *see also* 2018 Committee Notes (explaining that 2018 amendment's listing of settlement approval factors was not meant to displace any court-made factors, but simply to focus courts and parties on a shorter list of core concerns).

As set forth below, the Settlement represents an exceptional outcome for Settlement Class Members. A $356,500 non-reversionary Settlement Fund with net take-home payments expected to be approximately $300 is particularly strong given that this is only the second classwide GIPA settlement ever reached, and the Defendant's inability to satisfy a judgment or finance a larger settlement.

> **b.** **As one of the first ever GIPA class action settlements, the automatic payments obtained here are impressive.**

As set forth above, this case is one of the first GIPA class action settlements ever reached. The relief it secures sets an exceptional benchmark for those that follow. Under the Settlement, Settlement Class Members can expect to automatically receive a net payment of approximately $300 each, without the need to file a claim form. This represents their share of a $356,500 non-reversionary Settlement Fund, after deducting Settlement Administration Expenses, attorneys' fees and costs, and any incentive awards. This a significant recovery in a settlement market in its infancy, far exceeding the only other class-wide GIPA settlement reached, and comparing favorably even to settlements reached in other statutory privacy class action settlements.

The instant Settlement clearly bests the only other settlement involving GIPA claims: the recent class deal proposed in the 23andMe multi-district litigation pending in the Northern District of California. *See In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, No. 24-md-

16

03098-EMC, dkt. 103-2 (N.D. Cal. Sept. 12, 2024). The settlement stems from a data breach that

allegedly exposed, among other things, genetic information as defined under GIPA. *Id.*, dkt. 78,

at 144 (N.D. Cal. June 26, 2024). Illinoisans and others in states with laws similar to GIPA are

part of a statutory damages subclass that provides only marginal monetary relief: individuals

must submit a claim form to receive an estimated $144 (assuming a low claims rate of 10%;

higher claims rates would, of course draw this amount down). *Id.*, dkt. 150-1, at 13-14 (N.D. Cal.

Nov. 5, 2024). Looking to bridge the gap over that settlement's meager monetary relief, the

Parties propose a credit monitoring package. (*See id.*) Such relief pales in comparison to the

results achieved here, where all Settlement Class Members will have approximately $300 sent to

them directly without the need for a claim form. What's more, Settlement Class Members will

receive this relief notwithstanding Sequencing's precarious financial resources and uncertain

insurance coverage, justifications that the settling parties in 23andMe relied on to explain away

their far inferior deal.

Given the lack of other GIPA class actions, early settlements under the Illinois Biometric

Information Privacy Act are instructive comparators, especially given the similar structure and

data protection goals of both statutes.[4] Early BIPA class actions settled on decidedly less

favorable terms than those included in the Settlement here. *See e.g.*, *Zhirovetskiy v. Zayo Grp.,*

*LLC*, No. 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) ($990,000 fund for 2,200 class

members, which capped payments at $400 and reverted up to $490,000 of unclaimed funds back

---

[4]    *See e.g.*, 740 ILCS 14/10 (describing both genetic information and biometric identifiers
as "personal information that can be used to uniquely identify an individual"); *compare* 410
ILCS 513/30(a)(2) (requiring written release by the subject of the genetic test before disclosure)
*with* 740 ILCS 14/15(b)(3) (requiring written release by subject of the biometric identifier
before collection of biometric identifiers); *compare* 410 ILCS 513/40 *with* 740 ILCS 14/20 (setting out
similar statutory damages provisions).

to defendant) (attached as Exhibit 3); *Marshall v. Life Time Fitness, Inc.*, No. 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (providing credit monitoring and capping class member payments at $270 per claimant, with unclaimed funds reverting to defendant) (attached as Exhibit 4); *Sykes v. Clearstaff, Inc.*, No. 2019-CH-03390 (Cir. Ct. Cook Cnty. Jan. 5, 2021) ($950,000 reversionary fund resulting in payments of $116.56 to class members) (attached as Exhibit 5). This Settlement, by contrast, establishes a non-reversionary Settlement Fund without the need for any claims process at the outset, thus aligning itself with the leading BIPA settlements that also include automatic payments. *See, e.g.*, *Burton v. BWAY Corp.*, No. 2018-CH-09797 (Cir. Ct. Cook Cnty. Apr. 4, 2023) (providing direct checks to 1,246 settlement class members) (attached as Exhibit 6). Based on this, there is no question that the Settlement provides strong relief to Settlement Class Members.

### c. The risks of continued litigation through summary judgment, trial, appeals, and collections weigh heavily in favor of Settlement.

This exceptional relief to the Settlement Class is immediate, avoiding potentially years of complex litigation and appeals, all surrounding untested liability questions under GIPA. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). The risk of obtaining less, if any, relief through continued litigation is significant. While this Court certified the class and subclass, Defendant was committed to continue to litigate this case. Were litigation to continue, Defendant would press the affirmative defenses that it raised in its answer. (Dkt. 30.) And given the lack of authority regarding GIPA, virtually every one of Defendant's arguments would raise an issue of first impression. These would be litigated not only before this Court, but likely the Seventh Circuit; early BIPA litigation, for example, spawned several long-running appeals in appellate courts

18

across the country. *See, e.g.*, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1159 (7th Cir. 2021), *certified question answered,* 2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023) (sending certified question regarding accrual of BIPA damages to Illinois Supreme Court). If Plaintiff withstood summary judgment, he would have to prevail at trial, before winning any appeal. In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young v. Rolling in the Dough*, No. 17-cv-7825, 2020 WL 969616, at *5 (N.D. Ill. Feb. 27, 2020) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

Compounding these legal risks is the practical reality of Defendant's inability to finance a judgment or higher value settlement. Discovery reflected Sequencing would not have the financial wherewithal to withstand a judgment—which could reach more than $10,000,000 in statutory damages—had the case not settled. And Defendant's carrier had made it clear, through the filing of a separate action for declaratory relief, that it was disputing its obligation to provide any coverage whatsoever to Plaintiff's claims. *Sentinel Ins. Co.*, No. 1:24-cv-04949, Dkt. 1 (N.D. Ill. June 14, 2024) (declaratory judgment action seeking complete denial of coverage). In other words, the significant relief provided in the Settlement—automatic payments from a non-reversionary Settlement Fund predicated on $500 per person—represents the best possible resolution that Settlement Class Members could hope to achieve in this litigation. This result is fair, reasonable, and adequate compared against the risks of continued litigation.

        **d.    The proposed method of distributing relief to the Settlement Class is effective.**

The "method of distributing relief" consideration looks to whether the methods proposed

for processing claims are "so complex that they discourage class members from pursuing valid claims." *T.K.*, 2022 WL 888943, at *14. No claims process is required here at all. And the Settlement also offers Settlement Class Members several easy options for receiving their payment, including digital payment options through Venmo and Zelle, in addition to a paper check option. (Settlement §§ 2.1(a)-(b).) "In addition to the method of submitting a claim, courts must also consider how claims are paid out." *T.K.*, 2022 WL 888943, at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendant[] or class counsel."). In addition to there being no claims process, there is no reversion of uncashed payments to Defendant. Hence, there is no room for gamesmanship in the distribution of relief.

> e.    **The terms of the requested attorneys' fees are reasonable.**

The next consideration under Rule 23(e)(2)(C)'s evaluation of the adequacy of relief are "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, Class Counsel intends to petition the Court for an award of attorneys' fees not to exceed 35% of the net Settlement Fund remaining after payment of Settlement Administration Expenses and any incentive award granted to the Class Representative. "[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40 percent." *T.K.*, 2022 WL 888943, at *24 (quotations omitted); *see also Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, Dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of fund in BIPA class action settlement); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, Dkt. 69 (N.D. Ill. Apr. 27, 2021) (same); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020) (same). Again, there is no clear-sailing agreement, and the Settlement Agreement permits Defendant to challenge the amount of any fees requested. (Settlement § 8.1.) For purposes of evaluating the adequacy of relief under Rule 23(e)(2)(C), the important thing to

20

note is that the Court's decision on settlement approval is completely distinct from its determination of fees. *T.K.*, 2022 WL 888943, at *15 ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement."). There is no suggestion the Settlement is inadequate on this account.

> **f.** **There are no side agreements separate from the Settlement Agreement.**

The last consideration in Rule 23(e)(2)'s assessment of the adequacy of relief requires this Court to take into account "any agreement made in connection with the [proposed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). This consideration ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2003 Amendment. Here, there are no such agreements; all terms and agreements affecting Settlement Class Members are contained within the Settlement Agreement.

In sum, each of the four express considerations of Rule 23(e)(2)(C)'s adequacy of relief requirement suggest that this factor is satisfied here.

> **g.** **The Settlement treats Class Members equitably.**

In addition to adequate representation, arm's-length negotiation, and adequacy of relief, the final factor in determining whether a proposed settlement is fair, reasonable, and adequate— and thus deserving of preliminary approval—is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Generally, a settlement that provides for pro rata shares to each class member will meet this standard." *T.K.*, 2022 WL 888943, at *15; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840-41 (1999) (describing pro

rata distribution of fund as a "straightforward model[] of equitable treatment"). That is true of the Settlement here. Each Settlement Class Member is entitled to the same relief—prospective assurances and a *pro rata* share of the Settlement Fund. The fact that Plaintiff intends to seek a service award for himself that, if approved, would lead him to receive more of the Settlement Fund, that is not problematic. "Equitably relative to each other" does not mean "equally to each other," and absent unusual circumstances, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943, at *15-16 (finding $2,500 service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted). The proposed Settlement Agreement treats all Settlement Class Members equitably relative to each other. All four Rule 23(e)(2) factors thus support preliminary approval here.

### C. The Proposed Notice Plan Should Be Approved in Form and Substance

As shown above, the proposed Settlement Class can be certified, and the proposed Settlement Agreement can be approved. Consequently, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a class certified under Rule 23(b)(3), like the Settlement Class, the Court must direct notice to the class that constitutes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be provided via "United States mail, electronic means, or other appropriate means," and must describe "clearly and concisely … in plain, easily understood language" the nature of the action, the definition of the Settlement Class,

the claims and defenses at issue, class members' right to appear through counsel if so desired, class members' right to request exclusion from the Class, the time and manner for requesting exclusion, and the binding effect of a class judgment on all Settlement Class Members. *Id.*

Here, the Settlement sets out a comprehensive notice plan focused on providing direct notice to Settlement Class Members via email and U.S. Mail. (Settlement § 4.2.) The Settlement Administrator will also take steps to identify and/or update any addresses that are missing from the Settlement Class List to ensure that the Notice successfully reaches as many Settlement Class Members as possible. (*Id.* §§ 4.1-4.2.) This includes attempting any remailings of returned U.S. Mail notice or emails that result in "bounce-backs." (*Id.* §§ 4.2(a)-(b).) The Settlement Administrator will also establish and maintain a Settlement Website that will host key documents, including a long form notice, and provide important dates and other relevant information, including instruction on how Settlement Class Members can choose their settlement payment method. (*Id.* § 4.2(d).) It will also include contact information for the Settlement Administrator and Class Counsel. (*Id.*) All of the proposed notices are easy-to-understand, written in plain language, inform the Class Members of their rights, include a link to the Settlement Website and comport with the Federal Judicial Center's guidelines on class notice. As this is best notice practicable, the Court should approve the notice plan set forth in the Settlement.

## V.     CLASS COUNSEL'S APPOINTMENT SHOULD BE CONFIRMED FOR PURPOSES OF THE SETTLEMENT

Finally, the Court should appoint Class Counsel for purposes of the settlement. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserting in the action,

(iii) counsel's knowledge of the applicable law, and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Just as the Court has previously appointed proposed Melvin's attorneys as class counsel in this case, it should appoint them as Class Counsel for purposes of the Settlement. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18 C 1526, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process.") (quotations omitted). As the Court has recognized, Class Counsel has extensive experience in litigating consumer privacy class actions, has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (*See* Ovca Decl. ¶¶ 11, 15; Ex. 2-A.) All of the Rule 23(g) considerations thus support the appointment of Plaintiff's counsel as Class Counsel for purposes of the Settlement.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order: (1) preliminarily approving the proposed Settlement Agreement; (2) certifying the proposed Settlement Class for settlement purposes and/or finding that the Settlement Class is likely to be certified for purposes of entering a final approval order; (3) appointing Class Representative David Melvin as the Settlement Class Representative; (4) directing that notice be provided to Settlement Class Members pursuant to the notice plan set forth in the Settlement Agreement; (5) appointing Class Counsel, Michael Ovca, as Class Counsel for purposes of the Settlement; (6)

scheduling a final fairness hearing in this matter; and (7) providing such other and further relief as the Court deems reasonable and just.[5]

<table>
<tr><td></td><td>Respectfully Submitted,</td></tr>
</table>

Respectfully Submitted,

**DAVID MELVIN,** individually and on behalf of all others similarly situated,

Dated: June 13, 2025

By: /s/ Michael W. Ovca
     One of Plaintiff's Attorneys

Michael W. Ovca
movca@edelson.com
EDELSON PC
350 N. LaSalle St., 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*

---

[5] Plaintiff will submit a proposed Preliminary Approval order for the Court's convenience setting forth proposed dates for the deadlines contemplated in the Settlement Agreement.